Filippo Marchino, Esq. (SBN 256011)
FM@XLAWX.com
Carlos X. Colorado, Esq. (SBN 231031)
CC@XLAWX.com
Thomas E. Gray, Esq. (SBN 299898)
TG@XLAWX.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Attorneys for Plaintiff Allison Klein,
Individually and On Behalf of All Others
Similarly Situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON KLEIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> Ljubljana Inter Auto d.o.o., a Slovenian Corporation, Dr. Ing. h.c.F. PORSCHE AG, a German corporation, and PORSCHE CARS NORTH AMERICA, INC., a Delaware corporation, <br><br> Defendants. | Case No. <br><br> **NATIONWIDE CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

1.    Plaintiff Allison Klein ("Plaintiff" or "Ms. Klein") brings this nationwide class action suit against Ljubljana Inter Auto d.o.o., a Slovenian Corporation, Porsche Cars North America, Inc., a Delaware Corporation, and Dr. Ing. h.c.F. Porsche AG, a German Corporation, to recover damages owed to her and others similarly situated.

## PARTIES

2.    Plaintiff Allison Klein is, and at all times relevant herein was, a resident of Los Angeles County, California.  She is a citizen of the State of California, and currently resides in Los Angeles County.

3.    Defendant Ljubljana Inter Auto d.o.o., ("Ljubljana"), is a Slovenian Corporation, with its principal place of business in Ljubljana, Slovenia.

4.    Defendant Porsche Cars North America, Inc. ("Porsche NA") is a Delaware Corporation with its principal place of business in the state of Georgia.

5.    Defendant Dr. Ing. h.c.F. Porsche AG ("Porsche AG") is a German Corporation, with its principal place of business in Stuttgart, Germany.

6.    Defendant Porsche NA is a wholly owned subsidiary of Defendant Porsche AG.

7.    Defendants Porsche NA and Porsche AG shall be referred to herein collectively as "Porsche."

8.    Defendants Ljubljana, Porsche NA, and Porsche AG shall be referred to herein collectively as "Defendants."

9.    Plaintiff is informed and believes, and upon such basis alleges, that at all times herein mentioned, each of the Defendants herein was an agent, servant, employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the remaining Defendants, and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

2

**CLASS ACTION COMPLAINT**

10.    Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of their primary wrongdoing and realized that their conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because there are over 100 members of the proposed class, at least one member of the proposed class has a different citizenship from a defendant and the total matter in controversy exceeds $5,000,000.

12.    Venue is proper pursuant to 28 U.S.C. § 1391(b) & (c) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and because Defendants are subject to the Court's personal jurisdiction in this judicial district.

I.    **FACTUAL ALLEGATIONS**

    A.    **<u>The Porsche Macan</u>**

13.    The Porsche Macan (Codenamed as "Type 95B") is a five-door luxury crossover SUV manufactured by Defendant Porsche AG since 2014.

14.    It is built and assembled in Leipzig, Germany by Defendant Porsche AG, utilizing certain parts furnished by Defendant Ljubljana, and distributed in the United States by Defendant Porsche NA.

//

**CLASS ACTION COMPLAINT**

15. The production version of the Macan was first unveiled at the 2013 Los Angeles Auto Show held in California. European models went on sale in the spring 2014 while US models arrived at US dealerships in late spring 2014 as 2015 model year vehicles.

16. The Macan range sold in the North American market consists of several variants, including the Macan, Macan Sport Edition, Macan S, Macan GTS and the Macan Turbo. Since 2014, the year the Macan was launched, Porsche has sold over 107,000 Macan vehicles in the United States. In the calendar year 2014, Porsche sold 7,241 Macan vehicles; in the calendar year 2015 Porsche sold 13,533 Macan vehicles; in the calendar year 2016 Porsche sold 19,332 Macan vehicles; in the calendar year 2017 Porsche sold 21,429 Macan vehicles; in the calendar year 2018 Porsche sold 23,504 Macan vehicles; and in the calendar year 2019, Porsche sold 22,667 Macan vehicles. To this day, the Porsche Macan range represents the single best-selling model Porsche has ever sold in the United States.

17. In the United States, there are three different variants of gasoline engines available on the Macan platform:

- a 2.0 liter turbocharged inline "I" 4-cylinder engine powering the Macan and Macan Sport Edition variants;
- a 3.0-liter twin-turbocharged "V6" 6 cylinder (with the cylinders mounted in two banks of three cylinders, forming a "V" shape) powering the Macan S and Macan GTS variants;
- a 3.6-liter twin-turbocharged "V6" 6 cylinder (with the cylinders mounted in two banks of three cylinders, forming a "V" shape) powering the Macan Turbo variant.

For some of the engines in the Macan range, while maintaining identical components, Porsche provides two different outputs of power. For example, the 3.0 V6 engine powering the Macan S and Macan GTS, can produce, respectively, 335

4

**CLASS ACTION COMPLAINT**

bhp when in the Macan S and 355 bhp when in the Macan GTS. This is achieved primarily through engine mapping and electronic engine management, meaning that the engines are identical to one another, even if their output is different.

18.    As will be explained in greater detail below, all of the Macans sold in the United States, irrespective of trim level or engine, suffer from two distinct sets of defects that will require that each Macan be repaired multiple times during its useful life at the expense of the vehicle's owner.

19.    All current and former owners and lessees of the Macans have experienced these problems while operating their Macans, even if not aware of it. These defects have placed them, the vehicle, and persons and property in the immediate danger of harm by both undermining the stability of the vehicle as well as leaking fluids from the engine. Additionally, these defects have caused them to sustain significant economic damages.

## B.    Defect #1 - Engine Leaks & Porsche's Concealment Efforts

20.    Porsche uses only Porsche engines, which it designed and manufactured, in the Macan line of vehicles it manufactures and sells.  Because of design decisions made by Porsche, the engine suffers from a number of design defects resulting in parts prematurely failing and, ultimately, in the Engine Leaks.  The three engine variants mentioned above, the 2.0 liter "I4" and the 3.0 and 3.6 liter "V6" engines, all suffer from a common design flaw that affects the seals between vital components of the engine. These defects arise from two parts of the engine:

(i) One defect affects the seals applied to the engine block and its external "covers", the timing cover seal and the valve cover gasket seal.

(ii) A second defect pertains to defects affecting the hydraulic serpentine belt tensioner seal between the piston and the cylinder.

The above shall be collectively referred to herein as the "**Engine Defects**" or "**Engine Leaks**".

5

**CLASS ACTION COMPLAINT**

21.     Both of the Engine Defects result in the same problem: a constant loss of fluids, mostly oils and petrochemical lubricants, that leak out of the closed circuits and contained spaces they are otherwise supposed to be in. In so doing, these Engine Leaks expose the engine and engine components (including, but not limited to, the serpentine belt, the under carriage, the engine block, the alternator, etc.), as well as the environment, to unnecessary exposure to harmful oils and other petrochemical products. Additionally, this loss of fluids is experienced by all purchasers and lessees of the Macan.  Due to the nature of the defect, it is an inevitability that each vehicle will develop a leak within a short time of purchase or lease, meaning that all vehicles suffered from the issue before they left Porsche's New Car Limited Warranty period or the lease period.

22.     The loss of the fluids is copious enough to drip off the engine.

23.     Repairing the Engine Leaks is expensive and time consuming because it is an "engine out repair," meaning, the engine has to be removed from the vehicle in order for the repairs to be completed.  Thus, in addition to the cost of parts, there are significant labor costs involved and the entire repair process takes several days if not weeks to complete.

24.     Rather than find an engineering solution to the Engine Leaks or use an alternative design that would not suffer from this defect, Porsche instead opted to cover up the problem so that purchasers and lessees of its luxury high performance vehicles would not realize that their automobiles were leaking oil and other petrochemical lubricants when they were still relatively new. The Macan features a "splash guard" on the underside of the engine.  Normally manufacturers create splash guards out of regular plastic and use them to prevent water from being splashed into the engine bay from underneath the vehicle while it is driving on the road.  The Macan's splash guard is different.  It is shaped like an under-engine tray. Instead of being made of the traditional polycarbonate plastics other similar vehicles use, it is instead made of a highly absorbent porous and fibrous material that can

6

**CLASS ACTION COMPLAINT**

absorb substantial amounts of fluids, thereby preventing the same from leaking onto the ground beneath the car. The Macan's splash guard hence prevents purchasers and lessees of the Macan from noticing the leak until the leak has been present for a significant amount of time and has progressed to the point that the splash guard can no longer absorb all of the oils and other petrochemical lubricants leaking from the vehicle.

25.    In essence, rather than fix the engine problem resulting in the Engine Leaks, Porsche instead opted to engineer a diaper for the car to hide the problem. This diaper, in effect, conceals the problem until the vehicle's warranty has expired and Porsche therefore avoids the costs associated with repairs, allocating these to the unsuspecting purchaser or lessee. Additionally, Porsche turns this into a profit, as the repairs will require Porsche parts that Porsche will happily sell.

26.    This diaper technique, in the automotive industry, is frequently known or referred to as the "Rolls-Royce" diaper trick, named after a practice that Rolls-Royce employed in the 1960s to prevent customers from discovering how much oil their vehicle's engine was losing. By placing diapers under the engine and concealing them with a plastic tray, the manufacturer was able to keep the driveways of its customers clean, and the customers in ignorant bliss.

27.    Ironically, Porsche's solution is essentially the same as the "engine leak diaper" products sold by third parties and intended to be used on commercial vehicles so that they may comply with pollution regulations relating to oil and petrochemical leaks without having to undergo expensive engine repairs.  Such patchwork solutions would not meet the expectations of Porsche consumers who pay upwards of $100,000 for these luxury vehicles.

28.    Although Porsche is aware of these Engine Leak issues, on information and belief, it instructs mechanics and technicians to do nothing about them during routine maintenance.

//

**CLASS ACTION COMPLAINT**

29.     Based on Porsche's representations in the USA Warranty and Maintenance schedules provided with the Porsche Macan, the Macan's engine, regardless of version, is intended and reasonably expected to last for the useful life of the vehicle and at least 160,000 miles, or 12 years, without the need for repair or replacement. According to the Macan's maintenance schedules, the engine in the Macan is expected to last beyond the warranty periods and should not require anything aside from ordinary maintenance during the useful life of the vehicle. For example, the Porsche Macan maintenance checklist (for all models of Macan) does not require maintenance of the engine seals within 160,000 miles (the highest number of miles shown in the maintenance checklist) or 12 years (the longest period of time shown in the maintenance checklist). Thus, the Engine Leaks in the Macans occur prematurely and before any reasonable consumer would expect the failure of the seals to occur.

30.     Relying on the fact that (i) most Macan owners will not service their own engine, and hence not see first-hand the leak, as well as the fact that (ii) most Macan owners have their engines serviced at complicit Porsche dealerships which are instructed to consider the leaks "normal", Porsche engaged in a practice of obfuscating the truth.

31.     Porsche engaged in this behavior with the express and intentional goal of preventing Macan purchasers and lessees from discovering the Engine Defects and the associated leaks, and hence actively concealing their damaged goods.

32.     Porsche concealed the oil leak problem for several reasons. First, it was cheaper to place something to catch a leak than it would be to use a comparable engine that would not leak or engineer a solution for the existing engine.

33.     Second, if consumers knew that their vehicles were beginning to leak oil and other petrochemical lubricants shortly after purchase or lease, they would not purchase or lease the vehicle. At the same time, if word spread about the leak, *prospective* purchasers and lessees would be dissuaded from purchasing or leasing

8

**CLASS ACTION COMPLAINT**

Porsches as well.

34.    Third, concealing the Engine Leaks allowed Porsche to avoid dealing with the thorny issue presented by the vehicle's warranty.  Although the vehicles are leaking oil and other petrochemical lubricants while they are under warranty because the defect manifests early in the life of the cars, the splash guard absorbs the oil and conceals the problem from purchasers and lessees until after the warranty has expired.  The warranty only covers repairs of the vehicle "if it fails to function properly as designed during normal use."

35.    Additionally, on information and belief and based on the experience of Plaintiff and other class members, the Engine Leak repairs will not be covered by Porsche's New Car Limited Warranty because the Engine Leak defect results from the design of the engine and the car is therefore functioning "as designed."  Thus, if consumers were aware of the defect, they would take their vehicles in to dealerships for repair, only to learn that the repairs would cost thousands of dollars and would not be covered by the warranty, information that, if disseminated, would deter others from purchasing Porsches.  This information would also deter the purchasers and lessees from buying or leasing Porsches in the future.

36.    Alternatively, if the vehicle was in fact covered under warranty, Porsche still benefits tremendously from concealing the defect from the public because it is able to avoid the cost of having to pay dealerships to perform warranty repairs on the vehicles.  Because the repairs cost several thousand dollars, they would have a significant impact on the profitability of the vehicles.  In addition, because Porsche has failed to develop an engineering solution that would prevent the problem from reoccurring, it is not actually capable of fixing the issue.  At best, it can replace the parts responsible for the Engine Leaks, which would simply fail again.  Thus, it could have to incur the cost of repair several times over the course of the warranty period.  However, because the splash guard is able to absorb oil until the vehicles are out of warranty, when purchasers do finally become aware of the leak, they will

**CLASS ACTION COMPLAINT**

not realize that it arose during the period of the warranty and will pay for repairs themselves.

37. This action hence in part arises from Porsche's failure, despite its longstanding knowledge of the material engine design defects discussed hereinabove, to disclose to Plaintiff and other similarly situated consumers that the Macan engines had inherent design defects that resulted in a continuous and systematic harmful oil and petrochemical fluid leaks which would ultimately require expensive and time consuming engine repairs.

## C.   Defect #2 - The Suspension Defect & Concealment Efforts

38. To maximize profits, the Porsche Macan line of vehicles is built on a platform that is shared on a multitude of other vehicles, including vehicles from Volkswagen ("VW") and Audi.

39. The Volkswagen Group MLB platform, announced in 2012, is a shared modular construction for longitudinal, front-engine automobiles in the VW family. While originally developed by Audi, and first introduced on the Audi A5, it was subsequently introduced to the Audi A4, Audi Q5, Audi A8, Audi A7, Audi A6, and, finally, Porsche Macan.

40. The Porsche Macan shares its platform and wheelbase with the first-generation Audi Q5 (made by Audi from 2008 to 2017). Simply, the Macan is an Audi Q5 with some Porsche parts. While the powertrain (engine and transmission) are mostly unique to Porsche, about one third of the Macan is otherwise identical to the Q5 vehicle that it is based on.

41. Notably, amongst the 1/3 of the components it shares with the Audi Q5 are the suspension configuration and parts, including the upper control arms and relative bushings, at issue in this complaint.

42. The parts in question, while they carry a unique Porsche Stock Keeping Unit (SKU) number within the Porsche inventory, are actually identical and

10

interchangeable with those found on an Audi Q5 and in fact bear the markings of not Porsche, but Audi.

43.    For example, the Macan Front Left Upper Forward Suspension Control Arm bears Porsche part number 8K0407505P, but it is clearly manufactured for Audi, as it bears the Audi symbol.



44.    This part, 8K0407505P fits all Porsche Macan models (16 variants of them) starting from model year 2016. However, this part was not actually engineered for use in the 440 horsepower Macan, which Porsche defines as "a compact SUV that inextricably combines sportiness, design and everyday practicality," but rather for use in the 270 horsepower Audi Q5. In fact, the part was first used by Audi in 2009, and was since fitted to at least another 4 Audi models, and 70 variants of these models, manufactured between 2009 and 2017, including the following:

- Audi A5 2.0L A/T Quattro Base Coupe - 2010, 2011
- Audi A5 2.0L A/T Quattro Cabriolet Convertible - 2010, 2011, 2012
- Audi A5 2.0L CVT FWD Cabriolet Convertible - 2010, 2011, 2012
- Audi A5 2.0L M/T Quattro Base Coupe - 2010, 2011
- Audi allroad 2.0L FLEX A/T Premium Plus Wagon - 2013, 2014, 2015,

11

2016

- Audi allroad 2.0L FLEX A/T Premium Wagon - 2013, 2014, 2015, 2016

- Audi allroad 2.0L FLEX A/T Prestige Wagon - 2013, 2014, 2015

- Audi Q5 2.0L A/T Premium Plus Sport Utility - 2011, 2012

- Audi Q5 2.0L A/T Premium Sport Utility - 2011, 2012

- Audi Q5 2.0L ELECTRIC/GAS A/T Hybrid Prestige Sport Utility - 2013, 2014, 2015, 2016

- Audi Q5 2.0L FLEX A/T Premium Plus Sport Utility - 2013, 2014, 2015, 2016, 2017

- Audi Q5 2.0L FLEX A/T Premium Sport Utility - 2013, 2014, 2015, 2016, 2017

- Audi Q5 3.0L TDI V6 DIESEL A/T TDI Premium Plus S-Line Sport Utility - 2016

- Audi Q5 3.0L TDI V6 DIESEL A/T TDI Premium Plus Sport Utility - 2014, 2015, 2016

- Audi Q5 3.0L TDI V6 DIESEL A/T TDI Prestige S-Line Sport Utility - 2016

- Audi Q5 3.0L TDI V6 DIESEL A/T TDI Prestige Sport Utility - 2014, 2015, 2016

- Audi Q5 3.0L V6 A/T Premium Plus Sport Utility - 2013, 2014, 2015, 2016, 2017

- Audi Q5 3.0L V6 A/T Prestige Sport Utility - 2013, 2014, 2015, 2016, 2017

- Audi Q5 3.2L V6 A/T Premium Plus Sport Utility - 2009, 2010, 2011,

**CLASS ACTION COMPLAINT**

2012

- Audi Q5 3.2L V6 A/T Premium Sport Utility - 2009, 2010

- Audi Q5 3.2L V6 A/T Prestige Sport Utility - 2009, 2010, 2011, 2012

- Audi S5 3.0L V6 A/T Cabriolet Convertible - 2010, 2011, 2012

45.    The suspension components, including the example here above, are not adequate for the Macan. As a result of the engine, gearbox[1], all-wheel drive[2], transfer case, suspension tuning, and exterior body being all unique to the Macan, as well as all dimensions increasing[3], the Macan line of vehicles places loads on the suspension components that are above and beyond those expected by an Audi Q5.

46.    The result is that these components, designed for lighter loads and applications, will inevitably prematurely fail when employed for use in the Macan. Chief amongst these components are the upper control arm bushings.

47.    In a car, bushings have a function similar to cartilage in joints of the human body. Worn or damaged cartilage results in bone on bone contact and discomfort. Worn or damaged bushings causes metal on metal contact, tire wear, discomfort, noises, and vibrations.

48.    Control arm bushings usually consist of an outer metal sleeve, a durable rubber or polyurethane bushing, and an inner metal sleeve. Control arm bushings are important for driving comfort and handling as they cushion the suspension system, which in turn controls noise and vibrations, and also provide a softer ride

---

[1] The eight-speed automatic from the Audi Q5 is replaced by a Porsche seven-speed Porsche Doppel Kupplungs getriebe ("PDK"), which translates to Porsche double-clutch transmission.

[2] The quattro all-wheel drive system from the Audi Q5 is replaced by an electrical Haldex system.

[3] The Macan line is heavier (200 lbs), longer (1.7 in) and wider (1.4 in) than its sister Audi Q5

13

**CLASS ACTION COMPLAINT**

over bumps. Bushings can flex and move while retaining stiffness and the ability to return to their original shape and position.

49.    The heavy loads and the stress of frequent movement experienced in the Macan, when compared to the models the parts were intended for, cause these control arm bushings to prematurely deteriorate.  This defect shall be referred to hereinafter as the "**Suspension Defect**" or "**Failing Bushings**."

50.    Based on Porsche's representations in the USA Warranty and Maintenance schedules provided with the Macan, the Macan's suspension system, regardless of version, is intended and reasonably expected to last for the useful life of the vehicle and at least 160,000 miles, or 12 years, without the need for repair or replacement. According to the Macan's maintenance schedules, the suspension system in the Macan is expected to last beyond the warranty periods and should not require any maintenance during the useful life of the vehicle. For example, the Porsche Macan maintenance checklist (for all models of Macan) does not require maintenance of the bushings within 160,000 miles (the highest number of miles shown in the maintenance checklist) or 12 years (the longest period of time shown in the maintenance checklist). Thus, the Suspension Defect in the Macan occurs prematurely and before any reasonable consumer would expect the failure to occur.

51.    The Suspension Defect is experienced by all purchasers and lessees of the Macan,  Due to the nature of the defect, it is an inevitability that each vehicle will develop the failing bushings within a short time of purchase or lease, meaning that all vehicles suffered from the issue before they left Porsche's New Car Limited Warranty period or lease period.

52.    Repairing the Failing Bushings is relatively expensive and time-consuming as it requires moderate work on the front end of the vehicle.

53.    Rather than find either an engineering or manufacturing solution to the Failing Bushings or use an alternative design that would not suffer from this defect, Porsche instead opted to cover up the problem so that purchasers and lessees of its

14

**CLASS ACTION COMPLAINT**

luxury high performance vehicles would not realize that their automobiles would soon have suspension parts failing.

54. Although Porsche is aware of these Failing Bushings issues, on information and belief, it instructs mechanics and technicians to do nothing about it during routine maintenance while the vehicle is under warranty.

55. Porsche concealed the Failing Bushing problem for several reasons. First, if consumers knew that their vehicles were prone to a hidden failure shortly after purchase, they would not purchase or lease the vehicle.

56. Second, concealing the problem, by not informing users of it, allowed Porsche to avoid dealing with the thorny issue presented by the vehicle's warranty. Although these components inevitably fail while the vehicles are under warranty, a vast majority of consumers will not detect it until after the warranty has expired. The warranty only covers repairs of the vehicle "if it fails to function properly as designed during normal use."

57. Additionally, on information and belief and based on the experience of Plaintiff and other class members, the Failing Bushings repairs will not be covered by Porsche's New Car Limited Warranty because the Suspension Defect results from the design of the suspension and the car is therefore functioning "as designed." Thus, for the consumers who were aware of the defect, and would take their vehicles in to dealerships for repair, they would learn that the repairs would cost a few thousand dollars and would not be covered by the warranty, information that, if disseminated, would deter others from purchasing or leasing Porsches. This information would also deter the purchasers and lessees from buying or leasing Porsches in the future.

58. Alternatively, if the vehicle was in fact covered under warranty, Porsche still benefits tremendously from concealing the defect from the public because it is able to avoid the cost of having to pay dealerships to perform warranty repairs on the vehicles multiple times. As mentioned, the Failing Bushings will occur within

the normal use of the vehicle and, as such, it is capable of manifesting itself multiple times during the warranty period. By delaying or avoiding repairs, Porsche is limiting the number of repairs it has to do prior to the car leaving factory warranty. In addition, because Porsche has failed to develop an engineering solution that would prevent the problem from reoccurring, it is not actually capable of fixing the issue. At best, it can replace the parts responsible for the Failing Bushings, which would then simply fail again within a short period of time. Thus, it could have to perform the cost several times over the course of the warranty period.

59. The Suspension Defect also poses an inherent safety danger to the passengers and operators of the Macans. A problematic control arm assembly will produce a few symptoms. One of the first symptoms commonly associated with bad control arms is steering wheel vibrations. When the Suspension Defect manifests itself it will cause wheel shimmy, which may cause vibrations that are felt in the wheel. The vibrations may increase as the vehicle accelerates and smoothen out once the vehicle is traveling at speed. Another symptom commonly associated with Suspension Defect is steering wandering. The Suspension Defect causes the vehicle's steering alignment to shift, which in turn causes the steering to pull to the left or right when traveling down the road. This will require a constant correction from the driver in order to steer the vehicle straight. Clunking noises are another symptom of the Suspension Defect. When the bushings develop excessive play or looseness, this will cause them to knock during takeoff, or when the vehicle is traveling over rough terrain. The clunking sound will continuously get louder as the component wears or until it eventually breaks.

60. The control arms on a vehicle are a very important suspension component, as they are the component that links the spindle, hubs, and therefore wheel to the vehicle's chassis. When they fail, as with the manifestation of the Suspension Defect, it can cause problems for the vehicle that will compromise not only the comfort, but also the handling and, therefore, safety of the vehicle.

16
**CLASS ACTION COMPLAINT**

### D.   <u>Porsche's Knowledge of the Defects</u>

61.   Porsche wrongfully and intentionally concealed both sets of defects (Engine and Suspension Defects affect the engine seals and the suspension bushings, hereinafter sometimes collectively referred to as the "Subject Components") which can and do routinely fail, forcing Plaintiff and members of the Class (defined herein below) to incur out of pocket costs to repair or replace the Subject Components with, in some cases, repairs costing thousands of dollars.

62.   Knowledge and information regarding the aforementioned defects was in the exclusive and superior possession of Porsche and its dealers, and that information was not provided to Plaintiff and members of the Class. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Porsche's network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, individual consumer complaints that Porsche received and testing performed in response to these consumer complaints, inter alia, Porsche was aware (or should have been aware) of the premature failure of the engine seals and control arm bushings in the Macan and fraudulently concealed the defect and safety risk from Plaintiff and members of the Class. Porsche knew, or should have known, that the Engine Leaks and Suspension Defect were material to owners and lessees of the Macan and was not known or reasonably discoverable by Plaintiff and members of the Class before they purchased or leased Macans.

63.   Notwithstanding Porsche's exclusive and superior knowledge of the aforementioned defects, Porsche never disclosed to Plaintiff and members of the Class that the defects existed or that drivers and occupants of the Macan are at risk. Notwithstanding the fact that the Subject Components in the Macan should operate normally in vehicles for at least 160,000 driven miles, or 12 years, if not longer, on information and belief, Porsche have refused to repair or replace the defects

regardless of whether they occur within or outside of the time periods covered by the manufacturer's warranties. Thus, Porsche has wrongfully and intentionally transferred the cost of repair or replacement of the Subject Components to Plaintiff and members of the Class by fraudulently concealing the existence of the defects.

64.    Based on Porsche's representations in the USA warranty and maintenance schedules for the Macan, the Subject Components are expected to last for the useful life of the vehicle or, in the least, 160,000 miles or 12 years without the need for repair or replacement.

65.    For example, owners and lessees of Macan are provided, concurrently with the vehicle, an owner's manuals and USA Warranty and Maintenance schedules that do not show any need to inspect, maintain or replace within the first 160,000 miles or 12 years neither of the Subject Components. Indeed, the engine seals and the suspension system are entirely omitted from the maintenance schedules[4].

66.    As the USA Warranty and Maintenance pamphlet does not contain any maintenance recommendations for the Subject Components in the Macan, through and including the 160,000-mile service or 12 year mark, the same components are reasonably expected by Porsche, the proposed class representative and proposed class members to last the serviceable life of the vehicle that is in excess of 160,000 miles or 12 years. Despite this, the Subject Components in the Macan often fail at less than 20% of their reasonably expected useful life (meaning, within the first 32,000 miles or 2.5 years). Moreover, after experiencing a failure of the either of the Subject Components, other engine components and/or suspension components,

---

[4] USA Warranty and Maintenance booklets for the Macan have maintenance schedules that extend to 160,000 miles or 12 years. There is no scheduled maintenance or replacement recommended for either Engine seals or suspension bushings during the entirety of this mileage or time period. The "Maintenance Checklist" as published by Porsche, bearing Part Number PNA 000 162 NB, is attached hereto as Exhibit A.

**CLASS ACTION COMPLAINT**

ancillary to the Subject Components, are subject to uneven wear and tear, resulting likely in an early failure.

### E.    The Macan's Deceptive Moroney and Buyers Guide Stickers.

67.    All Macan vehicles sold through dealerships have either a Monroney or Buyers Guide window sticker affixed to a window.  Such stickers disclose the existence of a vehicle's warranty and also provide other information about the vehicle to consumers.

68.    A representative example of a Macan's window sticker appears below:



69.    Because these stickers are affixed to the windows of the Macan, purchasers and lessees are exposed to and view them.  Such window stickers are misleading to consumers because they misrepresent the nature of Porsche's product. For example, in the example above, the sticker promises the purchaser will receive

"Owner Protection" in the form of a "limited 4-year/50,000 mile warranty" when Porsche would in fact deny coverage of repairs for the Engine and Suspension Defects even though they are covered by the terms of the limited warranty.

70.    Additionally, the stickers make representations about the vehicle's engine and suspension without disclosing that that they suffer from the Engine and Suspension Defects, creating the illusion that the Macan does not suffer from these design defects.

## II.  CLASS MEMBERS SUFFER DAMAGES

71.    As a result of Porsche's misrepresentations and concealment of the Engine Leaks, Plaintiff and the Class have suffered significant damages. These include but are not limited to significant costs incurred to repair the Engine Leaks, loss of use for the vehicles over the course of the lengthy repair process, and depreciation in the value of the vehicles as a result of them suffering from the defects.

72.    Likewise, as a result of Porsche's misrepresentations and concealment of the Failing Bushings, Plaintiff and the Class have suffered significant damages. These include but are not limited to costs incurred to repair the failing bushings, loss of use for the vehicles over the course of the repair process, and depreciation in the value of the vehicles as a result of them suffering from the defect.

73.    These damages are not limited to purchasers of the Macans.  Lessees, who like purchasers are required to pay for the cost of repairs to the vehicles, suffer the same loss of use while the vehicles are being repaired and are leasing vehicles that are of a diminished value and quality.  Moreover, lessees who opt to purchase their Macan at the end of the lease are purchasing vehicles that suffer from the Engine Leak and Failing Bushing defects and will suffer from damages associated with the defects for the rest of the life of the vehicle.

**CLASS ACTION COMPLAINT**

### III.  THE CLASS REPRESENTATIVE

74.    Ms. Klein purchased, in December 2016, a model year 2017 Macan S from a Porsche franchised car dealership in Los Angeles County. The car had an initial in-service date (the date of first registration for use on public roads) of April 2016, and an original MSRP of approximately $66,000.

75.    The car was sold to Ms. Klein as a Certified Pre-Owned Porsche vehicle. At the time of purchase, the car had about 6,000 miles on it, and had been used by the Porsche Dealership itself as a demonstration vehicle.  It bore the window sticker reproduced above, which Ms. Klein reviewed and relied on in making her decision to purchase the car.

76.    The vehicle was sold to Ms. Klein with the remainder of the 4 year/50,000 mile factory warranty (set to expire on 04/29/2020 or at 50,000 miles, whichever comes first).

77.    Additionally, as a Certified Pre-Owned vehicle, Ms. Klein's Macan S came with an additional Porsche Approved Certified Pre-Owned Limited Warranty, covering the vehicle for two years after the expiration of the factory warranty.

78.    Throughout her ownership of the vehicle, Ms. Klein has regularly maintained her vehicle per the recommendations of Porsche.

79.    On or about March 27, 2018, Ms. Klein had a warning on her car about a coolant leak. Ms. Klein then brought the vehicle to an independent Porsche shop in the County of Los Angeles, in an attempt to identify the source of the leak. Unfortunately, the shop was in fact unable to identify the leak for her and directed her to take the car to a Porsche franchised dealer.

80.    Thereafter, on or about March 29, 2018, with approximately 15,000 miles on the odometer, Ms. Klein brought the vehicle to an authorized Porsche dealership service facility for both its regular service, as well as to seek to identify the coolant leak.

//

**CLASS ACTION COMPLAINT**

81.    According to the service records, during this service, the dealership performed an oil change and brake flush, replaced the fuel filter, checked the tires, flushed and changed the coolant system, repaired the water pump on her engine, and detailed the vehicle.

82.    In the paperwork that Ms. Klein received from the dealership, the technician stated that during the inspection, the vehicle was found to be leaking coolant from the water pump, and accordingly the water pump was replaced. In the same paperwork there was no mention of any other leaks and/or problems with the engine of Ms. Klein's Macan S.

83.    On or about May 8, 2019, with approximately 20,000 miles on the odometer, Ms. Klein took her car in for her regular yearly service (oil change) to an independent Porsche shop in the County of Los Angeles.

84.    During this service, the shop performed an oil change and identified the source of the oil leak. Ms. Klein was informed that her vehicle had the following engine defects:

       i)  Front timing cover leak

      ii) Valve cover leak

      iii) Hydraulic serpentine belt tensioner leaking

85.    In the days following, Ms. Klein contacted the authorized Porsche dealership which had seen her car in 2018, to inquire if these repairs would be covered under warranty. She was informed that they were not, but that there was nothing to worry about, as these were minor problems.

86.    Subsequently, Ms. Klein contacted a different authorized Porsche dealership in Los Angeles County, to inquire about whether the aforementioned leaks were covered by the warranty on her car. She was informed again that they were not.

87.    Given the information obtained by the dealerships, Ms. Klein continued to use her Macan S normally.

**CLASS ACTION COMPLAINT**

88.    In October of 2019, with about 23,000 miles on the odometer, Ms. Klein's Macan showed a warning indicating that the brakes on the vehicle needed to be replaced. She brought her vehicle back to the same independent shop that performed the May 2019 service.

89.    She performed the brake service and was informed by the technician that the Engine Leaks were still present and would soon require attention.

90.    Ms. Klein continued to use her Macan S normally.

91.    In early May of 2020, Ms. Klein's Macan S informed her, by displaying a notification on her dashboard, that is was soon going to be time for the yearly service.

92.    Within a week of that, the car displayed a low engine oil warning lamp, and informed Ms. Klein to urgently take the vehicle in for service.

93.    In May 2020 Ms. Klein brought her vehicle to the same independent shop as the service of May 2019 and the brake service of October 2019.

94.    On May 21, 2020 Ms. Klein had the "major service" performed on her vehicle, as required by the Porsche manual.

95.    Following the service, Ms. Klein was (again) informed that the Engine Leaks were still present and that they were now becoming important. She was given some pictures of the leaks, which depicted the bottom of her car covered in oily residue. She was also informed that the Engine Leaks were the source of her low engine oil warning, and that the problem would have to be addressed soon.

96.    Additionally, Ms. Klein was told that the Engine Defects present in her vehicle consistently appear in all the Porsche Macans seen by the same shop, and that these Engine Leaks are due to a known design defect of the Macan line and its engines.

97.    Ms. Klein was then informed that the cost of the work to repair her vehicle would exceed $10,000, require the engine to be temporarily removed from the vehicle, and would take about two weeks of work, during which time she would

23

have to find alternate transportation as the car would obviously be inoperable.

98.   Additionally, Ms. Klein was also informed that her vehicle had torn upper control arms bushings on both sides of the vehicle, which would lead to a progressively worse ride in her car and were a safety hazard.

99.   Again, Ms. Klein was told that a vast majority of Porsche Macan vehicles seen by the shop display the Suspension Defect, and that it is a well-known issue in the Porsche service community and that it is due to the inadequate materials and sizes of the front suspension bushings.

100.  Ms. Klein was then quoted $1,482.37 to replace both sides of the front upper control arm bushings, and that this repair would be temporary as the Suspension Defect would certainly reappear in approximately another 25,000 miles.

101.  Given the Engine Leaks and the Suspension Defect, Ms. Klein has suffered an ascertainable loss as a result of Porsche's omissions and misrepresentations associated with the aforementioned defects, including, but not limited to, out of pocket losses associated with the leaks and the torn bushings, diminished value of her vehicle, and other damages.

102.  Ms. Klein always operated here vehicle in a reasonably foreseeable manner and as the vehicle was intended to be used.

103.  Neither Porsche, nor any of its agents, dealers, or other authorized representatives informed Ms. Klein of the existence of these Engine Defects or Suspension Defect prior to, or any time after, her purchase.

104.  None of the advertisements reviewed or representations received by Ms. Klein and members of the Class contained any disclosure relating to these Engine Defects or Suspension Defect in the Macan. Had Porsche disclosed that these Engine Defects and Suspension Defect would require Plaintiff to spend thousands of dollars to repair or replace the Subject Components, Plaintiff and Class members would not have purchased or leased the vehicles or would have paid less for their vehicles.

105.  When Ms. Klein and members of the Class purchased or leased their

24

Macan, they reasonably relied on the reasonable expectation that the Macan's Subject Components would last beyond the warranty periods without need for repair or replacement and/or would not pose an unavoidable safety risk. Had Porsche disclosed that the Subject Components were prone to premature failures and/or an unavoidable safety risk, Plaintiff and Class members would not have purchased or leased the Macan or would have paid less for their vehicles.

## CLASS ACTION ALLEGATIONS

106. Plaintiff brings this action on her own behalf, and as a class action on behalf of the Class defined herein, pursuant to, and properly maintainable under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3). The Class is also maintainable as a class for declaratory and injunctive relief under Fed. R. Civ. P. 23(b)(2). The Class consists of over one hundred thousand purchasers and lessees of the Porsche Macan line of vehicles. Specifically, Plaintiff brings this suit on behalf of the following Class:

The "**NATIONWIDE DAMAGES CLASS**": All persons who purchased or leased a Porsche Macan vehicle, regardless of trim level, between January 1, 2014 and present, within the United States. The class excludes counsel representing the class and all persons employed by said counsel, governmental entities, Ljubljana Inter Auto d.o.o., Porsche Cars North America, Inc, or Dr. Ing. h.c.F. Porsche AG (including their officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns), any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose

25

interests are antagonistic to other class members.

107. Plaintiff shall serve as class representative of the Nationwide Damages Class.

108. Porsche subjected Plaintiff and the Class to the same wrongdoing and harmed them in the same manner. Now, Plaintiff and the Class seek to enforce the same rights and remedies pursuant to the same legal theories: violation of the Magnuson-Moss Warranty Act, violation of the Song-Beverly Consumer Warranty Act, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness, negligent misrepresentation, fraudulent concealment, unjust enrichment, affirmative misrepresentation, breach of implied warranty of fitness for a particular purpose,  violation of the Consumer Legal Remedies Act, and violation of the Unfair Competition Law.

109. <u>Numerosity</u>: The proposed class and subclass are so numerous that individual joinder of all their members is impracticable. While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. It is estimated that the "Nationwide Damages Class" consists of tens of thousands of members. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

110. <u>Typicality</u>: Plaintiff's claims are typical of the claims of her respective Class in that her claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory as their claims.

111. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has further retained the undersigned counsel, who have substantial experience in prosecuting complex lawsuits and class action litigation. Plaintiff and undersigned counsel are committed

26

**CLASS ACTION COMPLAINT**

to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to the Class.

112.  Superiority of Class Action and Impracticability of Individual Actions: Plaintiff and the members of the Class suffered harm as a result of Defendants' unlawful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual joinder of all members of the Class is impractical. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by the Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class Members. Adjudication of individual Class Members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other Class Members to protect their interests.

113.  Common Questions of Law and Fact Predominate: In addition, the requirements of Federal Rule of Civil Procedure 23 are satisfied by questions of law and fact common to the claims of Plaintiff and of each member of the Nationwide Damages Class and which predominate over any question of law or fact affecting only individual members of the Nationwide Damages Class. Common questions of law and fact include, but are not limited to, the following:

> 1. Do the engines in the Porsche Macan line of vehicles suffer from defects that result in them leaking oil and other

**CLASS ACTION COMPLAINT**

petrochemical lubricants?

2. Did Porsche install a splash guard to catch oil and petrochemical lubricant leaks and absorb them in the Porsche Macan line of vehicles?

3. Are the upper control arms and their bushings in the Porsche Macan line of vehicles unsuitable for use in the Macan such as to fail in a limited period of time?

4. Did Porsche's cost-cutting measures of utilizing Audi parts in the suspension assembly of the Porsche Macan line of vehicles damage the Class?

5. Are the Porsche Macan line of vehicles used or bought primarily for personal, family, or household purposes?

6. Did Porsche breach the terms of its express warranties with regards to Plaintiff and the Class?

7. Did Porsche breach the implied warranty of merchantability with regards to Plaintiff and the Class?

8. Did Porsche breach the implied warranty of fitness for a particular purpose with regards to Plaintiff and the Class?

9. Did Porsche make affirmative misrepresentations to Plaintiff and the Class?

10. Did Porsche fraudulently conceal material facts from Plaintiff and the Class?

11. Did Porsche Violate the Magnuson-Moss Warranty Act?

12. Did Porsche Violate the Song-Beverly Consumer Warranty Act?

28

**CLASS ACTION COMPLAINT**

13. Did Defendants unjustly enrich themselves at the expense of Plaintiffs?

14. Are Plaintiff and the Nationwide Damages Class consumers within the meaning of Civ. Code, § 1761(d)?

15. Is Porsche a person within the meaning of Civ. Code, § 1761(c)?

16. Did Porsche manufacture a good within the meaning of Civ. Code, § 1761(a)?

17. Did Porsche misrepresent the source, sponsorship, approval, or certification of the Macan?

18. Did Porsche represent that the Macan has characteristics or benefits that it does not have?

19. Did Porsche represent that the Macan is of a particular standard, quality, or grade, or of a particular style or model, when it was in fact of another?

20. Did Porsche advertise the Macan with intent not to sell them as advertised?

21. Did Porsche represent that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law?

22. Did Porsche violate the Consumer Legal Remedies Act?

23. Did Porsche engage in an unlawful business practice?

24. Did Porsche engage in an unfair business practice?

25. Did Porsche engage in a fraudulent business practice?

**CLASS ACTION COMPLAINT**

26. Did Porsche violate the Unfair Competition Law?

27. Are Plaintiff and the Class entitled to compensatory damages?

28. Are Plaintiff and the Class entitled to nominal damages?

29. Are Plaintiff and the Class entitled to punitive damages?

30. Are Plaintiff and the Class entitled to an award of attorneys' fees?

31. Are Plaintiff and the Class entitled to an award of Injunctive relief?

114.  <u>Notice</u>: Notice can be provided via internet publication, published notice and/or through mail and paid for by Defendants.

## FIRST CLAIM FOR RELIEF
## BREACH OF EXPRESS WARRANTY, CALIFORNIA COMMERCIAL CODE § 2313
### As against Porsche NA

115.  The allegations of paragraphs 1 through 114 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of herself and the class of similarly situated Class members.

116.  Porsche NA gave a written warranty to Plaintiff and the Class that it would repair the Macan "If it fails to function properly as designed during normal use" during the New Car Limited Warranty Period.  Even before purchasing or leasing their vehicles, Plaintiff and the Class saw on the Macan's window sticker promises the purchaser will receive "Owner Protection" in the form of a "limited 4-year/50,000 mile warranty"

117.  In addition, Porsche NA created and distributed maintenance schedules that listed maintenance that would be required over the course of the first 160,000 miles or 12 years of the Macan's life.  These maintenance schedules did not refer to

**CLASS ACTION COMPLAINT**

the Subject Components, thereby indicating that they would not need to be repaired or replace in the course or regular maintenance for the first 160,000 miles or 12 years of ownership of the Macan's life.

118. The Macans did not perform as promised. The Macans suffered from the Engine Leaks and Suspension Defect within the limited warranty period and within the 160,000 miles or 12 years of ownership specified in the maintenance schedules.

119. Plaintiff and the Class are not required to notify Porsche NA of its breach of express warranty because as vehicle purchasers, they do not have any direct dealings with the manufacturer or its subsidiaries. In addition, on information and belief, Porsche NA has a policy of instructing technicians to not address the Engine Defects and Suspension Defects and not covering repairs for them under its warranty, rendering any notification futile.

120. Porsche NA failed to make repair or otherwise remedy the defects in the Macan as required by the warranty.

121. Plaintiff and the Class were harmed as a result of the breach of warranty and are therefore entitled to damages.

## SECOND CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY,
## CALIFORNIA COMMERCIAL CODE § 2314
### As against Porsche

122. The allegations of paragraphs 1 through 121 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of herself and the class of similarly situated Class members.

123. Plaintiff and the Class bought the Macan from Porsche dealerships, which in turn purchased the Macan from Porsche.

124. Plaintiff and the Class are intended third party beneficiaries of the

31

**CLASS ACTION COMPLAINT**

implied warranties that existed when the Macan was sold by Porsche to the Porsche dealerships.

125. In the alternative, when the Macan was sold by the Porsche dealerships to Plaintiff and the Class, the implied warranties were assigned to them as well in the course of the sale.

126. When, on the other hand, customers leased the Macan line of vehicles, the dealership sold the vehicle to both the customer and the leasing company, facilitating the transaction.

127. Therefore, at the time of purchase or lease, Porsche was in the business of selling the Macan.

128. The Macan would not pass without objecting in the trade under the contract description because it suffered from the Engine Defect and Suspension Defect. In addition, Porsche would not cover these two defects under the Macan's warranty.  In addition, the Suspension Defect poses a safety hazard to consumers.

129. The Macan is not fit for the ordinary purposes for which such goods are used because it suffered from the Engine and Suspension Defects, which Porsche would also not cover under the Macan's warranty.  In addition, the Suspension Defect poses a safety hazard to consumers.

130. The Macan does not conform to the promises or affirmations of fact made on its label because the window sticker affixed to the Macan promises the purchaser will receive "Owner Protection" in the form of a "limited 4-year/50,000 mile warranty" when Porsche would in fact deny coverage of repairs for the Engine and Suspension Defects even though they are covered by the terms of the limited warranty.   The stickers make representations about the vehicle's engine and suspension without disclosing that that they suffer from the Engine and Suspension Defects, creating the illusion that the Macan does not suffer from these design defects.

131.  Plaintiff and the Class are not required to notify Porsche of its breach of

32

**CLASS ACTION COMPLAINT**

implied warranty because as vehicle purchasers, they do not have any direct dealings with the manufacturer or its subsidiaries. In addition, on information and belief, Porsche has a policy of policy of instructing technicians to not address the Engine Defects and Suspension Defects and not covering repairs for them under its warranty, rendering any notification futile.

132. The Macan's failure to be free of the Engine and Suspension Defects and failure to have an express warranty that would cover the repair of the defects was a substantial factor in causing Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

## THIRD CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, CALIFORNIA COMMERCIAL CODE § 2315
### As against Porsche

133. The allegations of paragraphs 1 through 132 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of herself and the class of similarly situated Class members.

134. Plaintiff and the Class bought the Macan from Porsche dealerships, which in turn purchased the Macan from Porsche.

135. Plaintiff and the Class are intended third party beneficiaries of the implied warranties that existed when the Macan was sold by Porsche to the Porsche Dealerships.

136. In the alternative, when the Macan was sold by the Porsche dealerships to Plaintiff and the Class, the implied warranties were assigned to them as well in the course of the sale.

137. When, on the other hand, customers leased the Macan line of vehicles, the dealership sold the vehicle to both the customer and the leasing company, facilitating the transaction.

**CLASS ACTION COMPLAINT**

138. At the time of purchase or lease, Porsche knew or had reason to know that consumers like Plaintiff and the Class intended to purchase or lease the Macan to possess a vehicle free of design defects, such as the Engine and Suspension Defects, free of defects that would compromise safety, as the Suspension Defect does, and would have a warranty that would cover repairs for such defects if they were present.

139. At the time of purchase, Porsche knew that that the consumers like Plaintiff and the Class, who have no independent means of verifying the suitability of the Macan as a vehicle free of design defects, such as the Engine and Suspension Defects, free of defects that would compromise safety, as the Suspension Defect does, or verifying whether Porsche would in fact honor its warranty, necessarily relied on Defendant's skill and judgment to select and furnish a suitable vehicle.

140. Plaintiff and the Class justifiably relied on Defendant's skill and judgment.

141. The Macan was not suitable as a vehicle free of design defects, such as the Engine and Suspension Defects, free of defects that would compromise safety, as the Suspension Defect does, and that has a warranty that would cover repairs for such defects if they were present.

142. Plaintiff and the Class are not required to notify Porsche of its breach of implied warranty because as vehicle purchasers, they do not have any direct dealings with the manufacturer or its subsidiaries.  In addition, on information and belief, Porsche has a policy of policy of instructing technicians to not address the Engine Defects and Suspension Defects and not covering repairs for them under its warranty, rendering any notification futile.

143. The Macan's failure to be suitable for as a vehicle free of design defects, such as the Engine and Suspension Defects, free of defects that would compromise safety, as the Suspension Defect does, and that has a warranty that would cover repairs for such defects if they were present was a substantial factor in causing

34

Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

### FOURTH CLAIM FOR RELIEF

### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §2301 ET SEQ.

### As against Porsche

144. The allegations of paragraphs 1 through 143 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of herself and the class of similarly situated Class members.

145. The Macans are consumer products within the meaning of the Magnuson-Moss Warranty Act because they are tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes.

146. Porsche is a supplier and/or warrantor within the meaning of the Magnuson-Moss Warranty Act because it is engaged in the business of making the Macan directly or indirectly available to consumers and because it gives or offers to give a written warranty and/or because it is obligated under implied warranties.

147. Plaintiff and the Class are consumers within the meaning of the Magnuson-Moss Warranty Act because they are buyers or lessees of the Macan, which are consumer products, the individuals to whom the Macan are transferred to for the duration of the Macan's implied or written warranty, and/or the individuals who are entitled by the terms of the warranty or under California law to enforce against Defendant the obligations of the warranty.

148. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

149. As outlined in the claims for relief above, Porsche breached the express warranty and implied warranties of fitness and merchantability.

150. Plaintiff and the Class are excused from complying with 15 U.S.C. §

35

2310(a)'s informal dispute settlement procedure process because doing so would be futile, where Porsche has a policy of instructing technicians to not address the Engine Defects and Suspension Defects and not covering repairs for them under its warranty.

151. Porsche's conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
### (CIV. CODE § 1790, ET SEQ)
### As against Porsche

152. The allegations of paragraphs 1 through 151 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of herself and the class of similarly situated Class members.

153. The Porsche Macan is a new product that is used or bought primarily for personal, family, or household purposes.

154. Plaintiff and the Class bought Macan from dealerships after it was manufactured by Porsche.

155. Porsche breached their express warranty and implied warranties of fitness and merchantability was alleged in the preceding claims for relief.

156. Moreover, because Porsche willfully failed to comply with the Song-Beverly Consumer Warranty Act in misrepresenting The Macan in the manner described above, Plaintiff and the Class entitled to recover a civil penalty of two times their actual damages.

//

**CLASS ACTION COMPLAINT**

## SIXTH CLAIM FOR RELIEF

## AFFIRMATIVE MISREPRESENTATION

### As against Porsche

157. The allegations of paragraphs 1 through 156 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of herself and the class of similarly situated Class members.

158. Porsche represented to Plaintiff and the Class though its window stickers promising the purchaser or lessee will receive "Owner Protection" in the form of a "limited 4-year/50,000 mile warranty."

159. Porsche's representations on the window stickers are false. In fact, the Macan suffers from the Engine Defects and Suspension Defects and Porsche refuses to cover repairs for these defects

160. Porsche either knew that its representations were false when it made them or made the representations recklessly and without regard for their truth.

161. Porsche intended that Plaintiff and the Class rely on the representations.

162. Plaintiff and the Class reasonably relied on Porsche's representations.

163. Porsche's conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

164. Porsche acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class, which constitutes malice.

165. Porsche engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

166. Porsche intentionally misrepresented and/or concealed material information regarding the Engine Defects and Suspension Defects and the Macan's warranty. These misrepresentations and concealment were directed to Plaintiff and the Class, which constitutes fraud.

37

**CLASS ACTION COMPLAINT**

167. Therefore, Porsche acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

**SEVENTH CLAIM FOR RELIEF**

**NEGLIGENT MISREPRESENTATION**

**As against Porsche**

168. The allegations of paragraphs 1 through 167 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of herself and the class of similarly situated Class members.

169.  Porsche represented to Plaintiff and the Class though its window stickers promising the purchaser or lessee will receive "Owner Protection" in the form of a "limited 4-year/50,000 mile warranty."

170.  Porsche's representations on the window stickers are false.  In fact, the Macan suffers from the Engine Defects and Suspension Defects and Porsche refuses to cover repairs for these defects

171.  Regardless of whether Porsche honestly believed that the representations were true, Porsche had no reasonable grounds for believing the representations were true when it made them.

172. Porsche intended that Plaintiff and the Class rely on these representations.

173.  Plaintiff and the Class reasonably relied on Porsche's representations.

174.  Porsche's conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

175. Porsche acted in conscious disregard for the rights of others and put its own interests ahead of the interests of Plaintiff and the Class, which constitutes malice.

176. Porsche engaged in despicable conduct that subjected Plaintiff and the

38

Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes oppression.

177. Porsche intentionally misrepresented and/or concealed material information regarding the Engine Defects and Suspension Defects and the Macan's warranty. These misrepresentations and concealment were directed to Plaintiff and the Class, which constitutes fraud.

178. Therefore, Porsche acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

## EIGHTH CLAIM FOR RELIEF
## FRAUDULENT CONCEALMENT
### As against Porsche

179. The allegations of paragraphs 1 through 178 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of herself and the class of similarly situated Class members.

180. Porsche disclosed some facts to Plaintiff and the Class about Macan but intentionally failed to disclose other facts about the Macan pertaining to the existence of the Engine Defects and Suspension Defects, making the disclosure deceptive. Specifically, Porsche represented to Plaintiff and the Class though its window stickers promising the purchaser or lessee will receive "Owner Protection" in the form of a "limited 4-year/50,000 mile warranty." However, Porsche did not disclose that the Engine Defects and Suspension Defects would not be covered

181. The stickers make representations about the vehicle's engine and suspension without disclosing that that they suffer from the Engine and Suspension Defects, creating the illusion that the Macan does not suffer from these design defects.

182. In addition, Porsche intentionally failed to disclose certain facts that were

39

known only to it and that Plaintiff and the Class could not have discovered, including that the Macan suffered from the Engine Defects and Suspension Defects, and that Porsche would not cover repairs for these defects under its warranty.

183. Plaintiff and the Class did not know that the Macan suffered from the Engine Defects and Suspension Defects.

184. Porsche intended to deceive Plaintiff and the Class by concealing the facts.

185. Had the omitted information been disclosed, Plaintiff and the Class reasonably would have behaved differently.

186. Porsche's conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

187. Porsche acted in conscious disregard for the rights of others and put its own interests ahead of the interests of Plaintiff and the Class, which constitutes malice.

188. Porsche engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes oppression.

189. Porsche intentionally misrepresented and/or concealed material information regarding the Engine Defects and Suspension Defects and the Macan's warranty. These misrepresentations and concealment were directed to Plaintiff and the Class, which constitutes fraud.

190. Therefore, Porsche acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

//

**CLASS ACTION COMPLAINT**

## NINTH CLAIM FOR RELIEF

## UNJUST ENRICHMENT

### As against Defendants

191. The allegations of paragraphs 1 through 190 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of herself and the class of similarly situated Class members.

192. Porsche received a benefit in the form of revenue from the sales of the Macans that were sold to dealerships and subsequently to the Plaintiff and the Class as well as the leases of the Macans to the Class.

193. It is unjust for Porsche to retain the increased revenue it was able to make from the leases and sales as a result of its misrepresentations, and/or concealment of the Engine Defects and Suspension Defects in the Macan. The price Plaintiff and the Class paid to purchase or lease the Macan was a price for a vehicle without such defects, but Porsche saved money by designing and manufacturing a vehicle that suffered from such defects instead.

194. In addition, Defendants received a benefit in the form of revenue from the sales of parts needed to repair the Engine Defects and Suspension Defects in the Macan.

195. It is unjust for Defendants to retain the increased revenue it was able to make from the sales of parts needed to repair the Engine Defects and Suspension Defects in the Macan as a result of its misrepresentations, concealment, and/or breach of express and implied warranties.

196. Defendants conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

//

**CLASS ACTION COMPLAINT**

**TENTH CLAIM FOR RELIEF**

**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA"), CALIFORNIA CIVIL CODE § 1750 *ET SEQ.***

**As against Porsche**

197. The allegations of paragraphs 1 through 196 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of herself and the class of similarly situated Class members.

198. Plaintiff and the Class are consumers within the meaning of Civ. Code, § 1761(d).

199. Porsche is a person within the meaning of Civ. Code, § 1761(c).

200. Porsche is the manufacturer and seller to dealerships of the Macan, which constitutes a good within the meaning of Civ. Code, § 1761(a).

201. Porsche represented to Plaintiff and the Class though its window stickers promising the purchaser or lessee will receive "Owner Protection" in the form of a "limited 4-year/50,000 mile warranty."

202. Porsche's representations on the window sticker is false. In fact, the Macan suffers from the Engine Defects and Suspension Defects and Porsche refuses to cover repairs for these defects

203. Porsche either knew that its representations were false when it made them or made the representations recklessly and without regard for their truth.

204. Porsche intended that Plaintiff and the Class rely on the representations.

205. Plaintiff and the Class reasonably relied on Porsche's representations.

206. Porsche disclosed some facts to Plaintiff and the Class about Macan but intentionally failed to disclose other facts about the Macan pertaining to the existence of the Engine Defects and Suspension Defects, making the disclosure deceptive. Specifically, Porsche represented to Plaintiff and the Class though its window stickers promising the purchaser or lessee will receive "Owner Protection" in the form of a "limited 4-year/50,000 mile warranty." However, Porsche did not

42

disclose that the Engine Defects and Suspension Defects would not be covered

207. The stickers make representations about the vehicle's engine and suspension without disclosing that that they suffer from the Engine and Suspension Defects, creating the illusion that the Macan does not suffer from these design defects.

208. In addition, Porsche intentionally failed to disclose certain facts that were known only to it and that Plaintiff and the Class could not have discovered, including that the Macan suffered from the Engine Defects and Suspension Defects, and that Porsche would not cover repairs for these defects under its warranty.

209. Plaintiff and the Class did not know that the Macan suffered from the Engine Defects and Suspension Defects.

210. Porsche intended to deceive Plaintiff and the Class by concealing the facts.

211. Had the omitted information been disclosed, Plaintiff and the Class reasonably would have behaved differently.

212. In engaging in the above misrepresentations and concealment, Porsche conduct violated Civ. Code, § 1770(a) for at least the following reasons:

213. Porsche misrepresented the source, sponsorship, approval, or certification of the Macan.

214. Porsche represented that the Macan has characteristics or benefits that it does not have

215. Porsche represented that the Macan is of a particular standard, quality, or grade, or of a particular style or model, when it was in fact of another.

216. Porsche advertised the Macan with intent not to sell them as advertised.

217. Porsche represented that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

**CLASS ACTION COMPLAINT**

218.  As a direct and proximate result of the aforesaid conduct of Porsche Plaintiff and the Class have been damaged.

219.  By reason of the foregoing, Plaintiff and the Class have been irreparably harmed entitling them to injunctive relief, disgorgement and restitution.

220.  Plaintiff further seeks an injunction on behalf of herself and the Class prohibiting Porsche from selling the Macan without disclosing to prospective purchasers and Lessees that it suffers from the Engine Defects and Suspension Defects.  Plaintiff further seeks an injunction requiring Porsche to repair or replace the Subject Components in all Macans with ones that will not suffer from the Engine Defect or Suspension Defect, and/or buyback all Macans.

221.  Pursuant to §1782 of the CLRA, Plaintiff notified Porsche in writing of the particular violations of §1770 of the CLRA and demanded Porsche rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so. Plaintiff sent this notice by registered mail, return receipt requested, to Porsche's principal place of business.

222.  If Porsche fails to adequately respond to Plaintiff's demand within 30 days of the letter pursuant to §1782 of the CLRA, Plaintiff will amend this claim to add additional claims for relief, including claims for compensatory and exemplary damages. Plaintiff is already entitled to the relief set forth above, along with costs, attorneys' fees and any other relief which the Court deems proper.

## ELEVENTH CLAIM FOR RELIEF
## VIOLATION OF THE UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 *ET SEQ.*
### As against Porsche

223.  The allegations of paragraphs 1 through 222 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action

on behalf of herself and the class of similarly situated Class members.

224. Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  Porsche engaged in conduct that violated each of the statute's three prongs.

225.  Porsche represented to Plaintiff and the Class though its window stickers promising the purchaser or lessee will receive "Owner Protection" in the form of a "limited 4-year/50,000 mile warranty."

226. Porsche's representations on the window sticker is false.  In fact, the Macan suffers from the Engine Defects and Suspension Defects and Porsche refuses to cover repairs for these defects

227. Porsche either knew that its representations were false when it made them or made the representations recklessly and without regard for their truth.

228.  Porsche intended that Plaintiff and the Class rely on the representations.

229.  Plaintiff and the Class reasonably relied on Porsche's representations.

230.  Porsche disclosed some facts to Plaintiff and the Class about Macan but intentionally failed to disclose other facts about the Macan pertaining to the existence of the Engine Defects and Suspension Defects, making the disclosure deceptive.  Specifically, Porsche represented to Plaintiff and the Class though its window stickers promising the purchaser or lessee will receive "Owner Protection" in the form of a "limited 4-year/50,000 mile warranty."  However, Porsche did not disclose that the Engine Defects and Suspension Defects would not be covered

231. The stickers make representations about the vehicle's engine and suspension without disclosing that that they suffer from the Engine and Suspension Defects, creating the illusion that the Macan does not suffer from these design defects.

232.  In addition, Porsche intentionally failed to disclose certain facts that were known only to it and that Plaintiff and the Class could not have discovered, including

45

that the Macan suffered from the Engine Defects and Suspension Defects, and that Porsche would not cover repairs for these defects under its warranty.

233.  Plaintiff and the Class did not know that the Macan suffered from the Engine Defects and Suspension Defects.

234.   Porsche intended to deceive Plaintiff and the Class by concealing the facts.

235.  Had the omitted information been disclosed, Plaintiff and the Class reasonably would have behaved differently.

236.  As outlined in the claims for relief above, Porsche violated the unlawful prong through, among other things, its violations of the CLRA, California Commercial Code sections 2313, 2314 and 2315, the Magnuson-Moss Warranty Act, and the Song-Beverly Consumer Warranty Act.

237.  Porsche violated the unfair prong because Porsche's practices of making misrepresentations regarding and concealing the existence of the Engine Defects and Suspension Defects and failing to repair the Engine Defects and Suspension Defects under the terms of the express warranty offend an established public policy, are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  The utility of Porsche's conduct is greatly outweighed by the substantial harm to Plaintiff and the Class and Plaintiff and the Class could not have avoided the harm themselves.

238.  Porsche violated the fraudulent prong through their acts and practices as described above, including by misrepresenting and/or concealing material information regarding the existence of the Engine Defects and Suspension Defects and, that the Subject Components would have to be replaced within the first 160,000 miles or 12 years of ownership of the Macan's life, and that the Engine Defects and Suspension Defects would not be repaired under warranty.

239.  Porsche representations and omissions were likely to deceive consumers, including Plaintiff and the Class.   Moreover, Porsche's representations and

46

omissions were material to the reasonable consumer, including Plaintiff and the Class.

240.  Plaintiff and the Class reasonably relied on Porsche's representations and omissions.

241.  Porsche's conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

242.  Plaintiff further seeks an injunction on behalf of herself and the Class prohibiting Porsche from selling the Macan without disclosing to prospective purchasers and Lessees that it suffers from the Engine Defects and Suspension Defects.  Plaintiff further seeks an injunction requiring Porsche to repair or replace the Subject Components in all Macans with ones that will not suffer from the Engine Defect or Suspension Defect, and/or buyback all Macans,

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiff and the Class, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Class, and Plaintiff's counsel as counsel for the Class;

B.    An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Subject Components in all Macans with ones that will not suffer from the Engine Defect or Suspension Defect, and/or buyback all Macans, and/or buyback all Macans, and to fully

**CLASS ACTION COMPLAINT**

reimburse and make whole all Class members for all costs and economic losses;

D.    A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

E.    An order awarding costs, restitution, disgorgement, punitive damages, exemplary damages under applicable law, and compensatory damages for economic loss and out-of-pocket costs in an amount to be determined at trial;

F.    An order awarding any applicable statutory and civil penalties;

G.    A declaration that Defendants are required to engage in corrective advertising;

H.    An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.    An award of costs, expenses and attorneys' fees as permitted by law; and

J.    Such other or further relief as the Court may deem appropriate, just, and equitable.


DATED: November 2, 2020                    **THE X-LAW GROUP, P.C.**



By: _____

FILIPPO MARCHINO, ESQ.,
Attorneys for Plaintiff

**CLASS ACTION COMPLAINT**

# JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: November 2, 2020          **THE X-LAW GROUP, P.C.**


By: _____
    FILIPPO MARCHINO, ESQ.,
    Attorneys for Plaintiff

**CLASS ACTION COMPLAINT**

# EXHIBIT A

**PORSCHE**®

**Maintenance Checklist** – Macan/S/GTS/Turbo (2015-on)
Required Maintenance and Lubrication Service

**Oil Change** Macan Every 10,000 miles (15,000 km) or 1 year. **See Below Check Box**.

❏ **Maintenance** (Labor Operation 03 16 00 ..) See Technical Manual
After 40,000, 80,000, 120,000, 160,000 miles etc. / 60,000, 120,000, 180,000, 240,000 km etc.
**Note:** If the mileage for scheduled maintenance is not reached, maintenance must be performed no later than after 4, 8, 12..... years.

The terms 'check' and 'inspection' include all necessary subsequent work such as adjusting, readjusting, correcting and topping off, but do not include repairing, replacing and reconditioning parts or assemblies.

**Electrics**
❏ Diagnosis system: Read out fault memory and transfer gear wear integrator; reset maintenance interval
❏ Windshield wiper/washer system, headlight washer: Check function and nozzle adjustment
❏ Horn: Check operation
❏ Tires: Check tire pressure (TPM)
❏ Electrical equipment as well as indicator and warning lights: Check operation

**Inside of Vehicle**
❏ Seat belts: Check operation and condition
❏ Pollen filter: Replace filter element

**Outside of Vehicle**
❏ Check wiper blades
❏ Vehicle lighting: Check operation
❏ All headlights: Check adjustment
❏ Trailer hitch: Check operation
❏ Radiators and air intakes: Visual inspection for exterior debris and blockage
❏ Check all body drains for debris

**Under the Vehicle**
❏ Drain engine oil and change oil filter (Every 10,000 miles/15,000 km, see separate Oil Change Sheet, PNA 000 162 NC)
❏ Tires: Check condition
❏ Underside of vehicle: Visual inspection for leaks (oil and fluids)
    Underbody covers: Visual inspection, check that all are securely fastened – replace any damaged or missing panels
❏ Brake system: Visual inspection of the brake pads and brake discs for signs of wear (without removing wheels)
❏ Brake hoses and lines: Visual inspection for damage, correct routing and corrosion Check brake fluid level
❏ Axle shafts: Visual inspection of the dust boots for leaks & signs of damage
❏ Axle joints: Check play; visual inspection of the dust boots for signs of damage
❏ Drive shaft/Cardan shaft: Visual inspection of the rubber bellows for leaks & signs of damage
❏ Steering gear: Visual inspection of the dust boots for signs of damage
    Tie rod ends: Check play and dust boots
❏ Exhaust system: Visual inspection for leaks and signs of damage; check mounts

**Engine Compartment**
❏ Fill engine oil (See separate Oil Change Sheet, PNA 000 162 NC)
❏ Visual inspection for leaks (oil and fluids)
❏ Fuel system lines and connections: Visual inspection
❏ Check drive belt (only if vehicle is used for off-road driving)
❏ Coolant and hoses: Check level and antifreeze, check condition of hoses
❏ Windshield wiper/washer system, headlight washer: Check fluid level and antifreeze protection level
❏ Check firewall body drains for debris

**Additional Maintenance – Replace Spark Plugs** (Labor Operation 03 81 00 ..)
❏ Replace spark plugs: Macan/S/GTS/Turbo every 30,000 miles / 45,000 km or 4 years

**Additional Maintenance every 40,000 miles / 60,000 km or 4 years** (Labor Operation 03 79 00 ..)
❏ PDK transmission: Change oil and filter

**Additional Maintenance every 80,000 miles / 120,000 km or 4 years** (Labor Operation 03 85 00 ..)
Air filter element/s should be changed more often dependent on vehicle use and operation in dusty environments.
❏ Air Filter: Replace filter elements

**Additional Maintenance every 160,000 miles / 240,000 km or 16 years** (Labor Operation 03 95 00 ..)
❏ All-wheel final drive: Change oil
❏ Change rear final drive oil

**Additional Maintenance every 2 years** (Labor Operation 03 51 00 ..)
- ❏ Change brake fluid (use only Original Porsche Brake Fluid)
- ❏ Tire sealant (check expiration date and replace as necessary)

Inspection Performed - Technician Signature: _____

## Road Test Check
- ❏ Remote control, front seats, foot brake and electric parking brake (also operating travel), engine, clutch, steering, transmission, ParkAssist, Cruise control, PSM switch, sports exhaust system, heater, air-conditioning system and instruments: Check operation
- ❏ Oils, fluids: Visual inspection for leaks

Road Test Performed - Technician Signature: _____

**Customer Name:** _____    **Date:** ____/____/____

**VIN: WP1** _____

**Mileage** (check one) ❏ **Miles** ❏ **Kilometers:** _____

**Dealer Name:** _____    **Dealer Code:** _____

**Repair Order #:** _____

**Technician Name:** _____

**Technician Signature:** _____